1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11  JAMES ALLEN,
                                    NO. CIV. S-03-1294 WBS GGH
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER
                                    RE: MOTION FOR ATTORNEYS' FEES
14  COUNTY OF TEHAMA (also known
    as TEHAMA COUNTY), TEHAMA
15  COUNTY COUNSEL'S OFFICE,
    COUNTY OF TEHAMA BOARD OF
16  SUPERVISORS, NELSON DEAN BUCK,
    Individually and as the Tehama
17  County Counsel, and DOES 1
    through 1,000, inclusive,
18
            Defendants.
19
                          ----oo0oo----
20
21          This action arises out of plaintiff's termination from

22  the position of Deputy County Counsel in the Tehama County

23  Counsel's Office.  The court dismissed several of plaintiff's

24  claims pursuant to Federal Rule of Civil Procedure 12(b)(6)

25  ("Rule 12(b)(6)") in October 2003, and defendants prevailed on

26  their motion for summary judgment on the remaining claims in

27  December 2004.  Defendants now move for an award of attorneys'

28  fees against plaintiff pursuant to 42 U.S.C. §§ 12205 and 1988,

                              1

1  and against plaintiff's counsel, K. Stephen Swenson, pursuant to

2  28 U.S.C. § 1927 and the inherent ability of the court to

3  sanction attorneys.

4  I.   Factual and Procedural History

5       Plaintiff was, at all times relevant to this action,

6  employed as a Deputy County Counsel in the Tehama County

7  Counsel's Office.  (December 2004 Order at 2).  Plaintiff was

8  fired on October 28, 2002 for being "malignant" and for writing

9  improper "meet and confer" letters.  (Id. at 3).[1]

10      A.  Plaintiff's Original Complaint

11      Plaintiff filed suit in this court against defendants

12 in June 2003.  (Id. at 4).  Plaintiff brought his first five

13 causes of action against all defendants.  His first cause of

14 action was a 42 U.S.C. § 1983 claim for violations of his

15 constitutional rights under the First, Fourth, Fifth, and

16 Fourteenth Amendments.  (Compl. ¶¶ 25-31).  In his second cause

17 of action, plaintiff also invoked § 1983 and claimed that he had

18 been deprived of a property interest without due process.

19 Plaintiff claimed a constitutionally protected property interest

20 in payment for one day of unused vacation time, payment that he

21 alleged was still owing.  (Id. ¶¶ 32-36).  In his third cause of

22 action, plaintiff invoked 42 U.S.C. § 1985, alleging that

23 defendants had conspired to deprive him of his civil rights.

24 (Id. ¶¶ 37-44).  His fourth cause of action alleged a violation

25 of California Labor Code § 1102.5, a whistleblower protection

26 statute.  (Id. ¶¶ 45-51).  The fifth cause of action was for what

27 _____

28      [1]  A more complete recitation of the facts leading to this
     suit can be found within previous court orders.

2

1  plaintiff labeled "torts in essence."  (Id. ¶¶ 52-59).

2       Plaintiff alleged his sixth through ninth causes of

3  action against all defendants except Buck.  The sixth cause of

4  action was for "negligent employment/retention/supervision";

5  plaintiff's theory was that defendant Tehama County Counsel

6  negligently retained Allen's supervisor Buck after Buck was

7  diagnosed with cancer.  (Id. ¶¶ 60-66).  Plaintiff's seventh

8  cause of action was for breach of contract.  (Id. ¶¶ 67-70).

9  Plaintiff's eighth cause of action was for disability

10 discrimination in violation of the Fair Employment and Housing

11 Act (the "FEHA"), Title VII of the Civil Rights Act, and the

12 Americans with Disabilities Act (the "ADA").  (Id. ¶¶ 71-80).

13 Plaintiff's ninth cause of action, styled "wrongful termination

14 in violation of public policy," was a restatement of plaintiff's

15 ADA, § 1983, FEHA, and common law claims.  (See id. ¶¶ 81-86).

16 Plaintiff sought relief in the form of general and special

17 damages, costs and attorneys' fees, punitive damages, and

18 interest.  (Id. (Prayer for Relief)).

19      B. The October 2003 Order

20       Defendants moved to dismiss, pursuant to Rule 12(b)(6),

21 all of plaintiff's claims except for those for disability

22 discrimination  The court issued its order on this motion on

23 October 8, 2003.

24       The court dismissed plaintiff's § 1983 claim alleging

25 violations of the First, Fourth, and Fifth Amendments.  (October

26 2003 Order at 24).  The court reasoned that, since the government

27 may regulate the speech of its employees when they are speaking

28 on behalf of the government, defendants did not violate

                              3

plaintiff's constitutional rights when they restrained him from
writing improper "meet and confer" letters to opposing counsel.
Id. at 7-8; see Rosenberger v. Rector & Visitors of the Univ. of
Virginia, 515 U.S. 819 (1995).  Plaintiff's Fourth Amendment
claim was dismissed because plaintiff alleged neither a search
nor a seizure.  (October 2003 Order at 8).  The court also
dismissed plaintiff's claim arising under the Fifth Amendment due
process clause.  Plaintiff's due process claim was properly
analyzed under the Fourteenth Amendment.  The court also
dismissed plaintiff's § 1983 claim invoking the Fourteenth
Amendment right to procedural due process in relation to his
termination.  (Id. at 24).  The court found plaintiff to be an
at-will employee with no property interest in his job.  (Id. at
11).  Finally, all of plaintiff's claims under state law were
dismissed except for that arising under the FEHA.  (Id. at 24-
25).

        The October 2003 order permitted some claims to go
forward.  Defendants did not challenge the claims based on
disability discrimination, and therefore those claims survived.
Defendant's motion to dismiss the § 1985(3) action was granted,
but plaintiff was permitted to amend his complaint to reallege a
claim under that statute.  (Id. at 24).  Finally, the court held
that plaintiff's § 1983 allegation that defendants had wrongfully
deprived him of pay for his unused vacation time stated a claim,
and therefore defendant's motion on this point was denied.  Id.
///
///
///

1    C. Plaintiff's First Amended Complaint

2         Plaintiff's first amended complaint ("FAC"), filed

3    November 7, 2003, contained four causes of action.  In the first

4    cause of action, under § 1983, plaintiff claimed that all

5    defendants had deprived him of a liberty right in his reputation.

6    (FAC ¶¶ 28-37).  This first cause of action in the FAC was not

7    included in the original complaint.  Plaintiff's second cause of

8    action claimed that defendants had deprived him of pay for his

9    unused vacation time without affording him due process.  (Id. ¶¶

10   38-42).  Plaintiff's third cause of action restated the § 1985

11   claim in the original complaint, but this time more clearly

12   alleged that defendants had conspired to discriminate against

13   plaintiff.  (Id. ¶¶ 43-51).  Plaintiff's fourth cause of action,

14   against all defendants except Buck, was based on the ADA, the

15   FEHA, and Title VII.  (Id. ¶¶ 52-61).

16   D. The December 2004 Order

17        The court granted summary judgment to defendants on all

18   causes of action in an order filed December 28, 2004.  Regarding

19   plaintiff's first claim, that he had been deprived of a liberty

20   interest in his reputation, the court held that the level of

21   stigmatization that plaintiff alleged he suffered at the hands of

22   defendants was not enough to get to the jury on a Roth

23   stigmatization claim.  (December 2004 Order at 5-9); see Bd. of

24   Regents of State Colleges v. Roth, 408 U.S. 564 (1972).  At worst

25   defendants had told others that plaintiff was "malignant" and was

26   "more of a detriment than an asset" to his employer.  (Id. at 7-

27

28

1  8).[2]

2          Plaintiff's second cause of action was that he had been

3  deprived of pay for one day of unused vacation without due

4  process of law.  The court held that, although plaintiff had a

5  property interest in that day's pay, plaintiff had not taken

6  advantage of the process that was available to him to protect his

7  interest.  (Id. at 14).  The court also held that plaintiff

8  received the process due him under the Constitution.  (Id. at

9  16).

10         The court granted defendants summary judgment on

11 plaintiff's disability discrimination causes of action because

12 plaintiff had suffered no injury as a result of defendants'

13 conduct.  (Id. at 16-21).  Plaintiff admitted that "Mr. Allen's

14 vision problems did not play a role in Mr. Buck's decision to

15 terminate Mr. Allen."  (Id. at 17-18)(quoting Pl.'s Response to

16 Def.'s Am. Statement of Undisputed Facts at ¶ 168).  Because

17 plaintiff did not show that he suffered an adverse employment

18 action as a result of his disability, plaintiff did not make a

19 prima facie case under the ADA.  (Id. at 18); see Sanders v.

20 Arenson Prods., 91 F.3d 1351, 1353 (9th Cir. 1996).  The court

21 granted defendants summary judgment on the FEHA claim because

22 plaintiff had no standing to bring the claim.  (December 2004

23

24

25

_____

26         [2]    Defendants vigorously argued in their motion for
summary judgment, and again in this motion, that plaintiff also
27 failed to show the publication element of the Roth stigmatization
claim.  The court did not reach that issue in its December 2004
28 order.

1  Order at 19-21).[3]

2      Similarly, defendants were granted summary judgment on

3  plaintiff's § 1985 claim because he was not deprived of any right

4  or privilege due to his disability and therefore was not injured.

5  (Id. at 22).  In addition, plaintiff showed no conspiracy against

6  disabled persons.  (Id.).

7  II. Discussion

8      A. The Standard Under 42 U.S.C. §§ 1988 and 12205

9      Attorneys' fees may be sought only against the losing

10  party, but not his counsel, under §§ 1988[4] and 12205.[5]  Roadway

11  Exp., Inc. v. Piper, 447 U.S. 752, 756-57 (1980).  In contrast,

12  28 U.S.C. § 1927 "deals only with attorney conduct and involves

13  taxing costs against counsel."  Id. at 757.

14      In the context of civil rights statutes, strong policy

15  considerations support awarding attorneys' fees to prevailing

16  _____

17      [3]  The court also granted summary judgment to defendants
    on plaintiff's Title VII claim because Title VII does not cover
18  employment discrimination based on disability.  (December 2004
    Order at 16 n.9).
19

20      [4]  In any action or proceeding to enforce a provision of
        sections 1981, 1981a, 1982, 1983, 1985, and 1986 of
21      this title . . ., the court, in its discretion, may
        allow the prevailing party, other than the United
22      States, a reasonable attorney's fee as part of the
        costs . . .

23  42 U.S.C. § 1988.

24      [5]  In any action or administrative proceeding commenced
        pursuant to this chapter, the court or agency, in its
25      discretion, may allow the prevailing party, other than
        the United States, a reasonable attorney's fee,
26      including litigation expenses, and costs, and the
        United States shall be liable for the foregoing the
27      same as a private individual.

28  42 U.S.C. § 12205.

                              7

plaintiffs.  See Christiansburg Garment Co. v. EEOC, 434 U.S.
411, 418 (1978)(interpreting the fees shifting provision of Title
VII, and holding that "plaintiff is the chosen instrument of
Congress to vindicate a policy that Congress considered of the
highest priority")(citation omitted).  These policy
considerations are not present when a court considers awarding
attorneys' fees to a prevailing defendant in a civil rights case.
Id. at 418-19.  Therefore, a prevailing defendant in a civil
rights case may recover only where the plaintiff's action was
"frivolous, unreasonable, or without foundation."  Id. at 421.
An action is "frivolous" where it lacks an arguable basis in law
or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The
court need not find that plaintiff brought his action(s) in
subjective bad faith to award fees to defendant. Christiansburg,
434 U.S. at 421.  But "if a plaintiff is found to have brought or
continued such a claim in bad faith, there will be an even
stronger basis for charging him with the attorney's fees incurred
by the defense."  Id. at 422(emphasis in original).  Where some
claims are frivolous and others are not, the court may award fees
for the charges incurred as a result of defending the frivolous
claims if the frivolous claims are separable from those that are
not.  See Hensley v. Eckerhart, 461 U.S. 424, 435
(1983)("unrelated claims [must] be treated as if they had been
raised in separate lawsuits").

        In analyzing a claim to determine whether it is
frivolous, a court must resist any temptation to engage in post
hoc reasoning.  Christiansburg, 434 U.S. at 421-22.  "Even when
the law or the facts appear questionable or unfavorable at the

8

1  outset, a party may have an entirely reasonable ground for

2  bringing suit." Id. at 422.  However, a plaintiff cannot simply

3  bury his head in the sand before filing a civil rights claim; he

4  has the duty, through his attorney, to make a reasonable inquiry

5  into the applicable facts and law before filing his action.

6  Margolis v. Ryan, 140 F.3d 850, 854 (9th Cir. 1998); see also

7  Fed. R. Civ. P. 11.

8       The claim need not be frivolous at the time of filing

9  for defendant to recover under Christiansburg.  "Under the

10  Christiansburg standard, a prevailing defendant may also be

11  entitled to fees if the plaintiff continued to litigate the suit

12  after it clearly became frivolous." Marbled Murrelet v. Babbitt,

13  182 F.3d 1091, 1096 (9th Cir. 1999).

14       Although Christiansburg applied this "frivolous or

15  unreasonable" test to a case brought under Title VII, the Ninth

16  Circuit has applied it to cases in which defendants sought

17  attorneys' fees under § 1988 and the ADA.  Margolis, 140 F.3d at

18  854(§ 1988); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150,

19  1154 (9th Cir. 1997)(ADA).

20       B.  Applying the Christiansburg Standard

21            1. The dismissed claims

22       Plaintiff's original complaint alleged nine causes of

23  action, and plaintiff's FAC alleged one more.  Defendants do not

24  move the court for attorneys' fees in connection with the five

25  state law causes of action, but only in connection with the ADA

26  claim, the § 1983 claims, and the § 1985(3) claim.

27       Plaintiff's § 1983 claim invoking the First, Fourth,

28  and Fifth Amendments was frivolous.  Plaintiff himself apparently

9

thought so little of these claims that he did not bother to
defend their merit in his opposition to the motion to dismiss.
Not only was the First Amendment claim foreclosed by the Supreme
Court in Rosenberger, it defies common sense to argue that a
lawyer employed by a county has an unfettered First Amendment
right to insert whatever language he chooses into papers he files
on behalf of the county.  Plaintiff's Fourth Amendment claim was
also frivolous: he never alleged any search or seizure.
Plaintiff's Fifth Amendment claim was frivolous because it was
entirely duplicative of his Fourteenth Amendment due process
claim.  It is black letter law that the due process clause of the
Fifth Amendment applies to the federal government and the due
process clause of the Fourteenth Amendment applies to the states.
See Valdez v. Rosenbaum, 302 F.3d 1039, 1044 fn.2.

        Plaintiff advanced two theories under § 1983 as to why
his Fourteenth Amendment right to due process was violated.
Plaintiff alleged that he had both a property interest in his job
and in his unpaid vacation time.  He alleged that defendants
deprived him of these property interests without due process.
The first Fourteenth Amendment cause of action, that he had a
property interest in his job, was not frivolous under the
Christiansburg standard.  Although the court held plaintiff to be
an at-will employee under the county code and also held that a
Memorandum of Understanding ("MOU") did not apply to plaintiff as
to the procedure his employer had to follow when terminating him,
it was understandable that plaintiff would misinterpret this MOU.
(See October 2003 Order at 9-11).  In fact, the court found that
the MOU applied to the salary, vacation, medical, and other

1   benefits of employment that plaintiff received.  (December 2004

2   Order at 11).[6]

3                    2. Plaintiff's _Roth_ stigmatization claim

4            After this court's October 2003 order, plaintiff filed

5   his FAC alleging four causes of action.  His claims included a

6   due process claim for his unpaid vacation time, a § 1983 claim

7   based on his liberty interest in his reputation, a § 1985 claim

8   alleging a conspiracy to deprive plaintiff of equal protection of

9   the laws, and a disability discrimination claim.

10           It is a close question whether plaintiff's

11  stigmatization claim was frivolous.  All that plaintiff alleged

12  in his FAC was that, at worst, defendants informed others that

13  plaintiff had written "improper meet and confer letters" and that

14  plaintiff was "malignant" and "more of a detriment than an asset"

15  to his employer.  (December 2004 Order at 7-8).  The court found

16  that these comments did not rise to the level of stigmatization

17  required by Roth and its progeny.  (Id. at 9).  A claim alleging

18  stigmatizing charges of "insubordination, incompetence, hostility

19  towards authority, and aggressive behavior" is not enough to

20  support a Roth stigmatization claim, Gray v. Union County

21  Intermediate Educ. Dist., 520 F.2d 803, 806 (9th Cir. 1975), and

22  the comments plaintiff claims damaged his reputation fall short

23  of these types of charges.  Indeed, an attorney being called

24  "malignant" is hardly damaging at all.  In the world of

25  aggressive litigation, some clients may want the most malignant

26  _____

27          [6]    The second Fourteenth Amendment theory advanced by
    plaintiff, that he was denied pay for his unused vacation time
28  and that the MOU did not afford him due process, survived the
    motion to dismiss and is discussed below.

1  lawyer they can find.

2       Plaintiff argues that his claim was not frivolous
3  because the Roth stigmatization threshold should be lowered for
4  attorneys in small legal communities like Tehama County.  He
5  argues that no other legal employer in the area would hire him
6  after it became known that he had written improper meet and
7  confer letters.  The Ninth Circuit does not consider the size of
8  the community in determining whether a plaintiff has a viable
9  stigmatization claim.  In Gray, for example, the plaintiff was a
10 special education school teacher in a rural county.  520 F.2d at
11 804.  Gray did not hold that the small size of the Union County
12 educational community was a distinguishing factor lessening the
13 standard by which comments are adjudged to be stigmatizing.

14      In light of the Christiansburg standard, however, the
15 court does not find that plaintiff's Roth stigmatization claim
16 was frivolous.  Although this court's reading of the law
17 foreclosed plaintiff's arguments, plaintiff could have argued to
18 the Ninth Circuit that a lawyer's good name is his primary asset,
19 and that the standards for lawyers in small communities should be
20 different.

21            3. Plaintiff's ADA claim

22      The next question is whether the claims made under the
23 ADA were frivolous.[7]  After eighteen months of litigation,

24

---

25          [7]  Plaintiff might argue that his claims were also made
26 under the California FEHA, and that therefore the attorneys' fees
   analysis must be analyzed under that standard.  However, the
   standard is the same for awarding attorneys' fees to prevailing
27 defendants under both the ADA and the FEHA.  Moss v. Associated
   Press, 956 F.Supp. 891, 893 (C.D. Cal. 1996)("The court's
28 discretion in granting attorney fees to a prevailing defendant

plaintiff finally admitted on December 20, 2004 that "Mr. Allen's visual problems [related to his diabetes] did not play a role in Mr. Buck's decision to terminate Mr. Allen."  (See Pl.'s Response to Def.'s Am. Statement of Undisputed Facts at ¶ 168)(plaintiff responded that the quoted statement was "[u]ndisputed for the purposes of this motion").  This was not a typographical error.  At the hearing on defendants' motion for summary judgment, the court and plaintiff's counsel had the following exchange:

> THE COURT: Are you retracting your statement, then? [Defendants' counsel] Mr. Smith points out that you admitted that his [plaintiff's] termination had no relation to his disability.
>
> MR. SWENSON: Your Honor, no, I don't do that. And, in fact, in all candor, we don't have direct evidence of that, and that's what this admission is.  We concede that point, there is not direct evidence."

(Rep.'s Tr. on Mot. for Summ. J. at 9).  Later in the hearing, plaintiff's counsel also conceded that plaintiff "was able to perform the essential functions of his job with or without [any] accommodations."  (Id. at 12).

Defendants have made a strong argument that the ADA claim was frivolous from its inception.  Plaintiff was told that he was terminated because he was malignant and had written improper letters to opposing counsel. (December 2004 Order at 3).  There was a good deal of evidence accessible to plaintiff at the time he filed suit that tended to show that these were the real reasons for his termination.  Plaintiff's supervisor Buck had told plaintiff numerous times throughout plaintiff's tenure as a deputy counsel that his litigation style was objectionable.

---

under the California FEHA is governed by the Supreme Court's decision in Christiansburg").

1   (See Pl.'s Response to Def.'s Am. Statement of Undisputed
2   Material Facts ¶ 27, 31-35, 39, 43, 45, 52, 56, 58-59, 62-67, 87,
3   100)(admissions of plaintiff).

4           Plaintiff now argues that minor discrepancies in what
5   Buck and others said about plaintiff's termination and how the
6   office sought to accommodate plaintiff's disability led plaintiff
7   to believe that the reasons Buck gave him for his dismissal were
8   a pretext.  The court has serious questions about this line of
9   argument because of the overwhelming evidence that plaintiff was
10  fired due to his job performance.  Nevertheless, given the policy
11  considerations highlighted in Christiansburg, and
12  Christiansburg's admonition to courts to avoid the temptation to
13  engage in post hoc reasoning, the court accepts plaintiff's
14  reasoning and finds his ADA claim not frivolous.

15              4. Plaintiff's § 1985 Claim

16          Plaintiff's § 1985(3) claim was not frivolous.
17  Plaintiff does not dispute that "Mr. Buck was the only person
18  involved in the decision to terminate [plaintiff]."  (Pl.'s
19  Response to Def.'s Am. Statement of Undisputed Material Facts ¶
20  99).  In his opposition, plaintiff does not dispute that this
21  claim was frivolous.  (Pl.'s Opp'n to Def.'s Mot. for Attorneys'
22  Fees).  However, because the court finds plaintiff did not file
23  his disability discrimination cause of action frivolously, and
24  because evidence of the lack of conspiracy may have only become
25  available to plaintiff late in the litigation, the court finds
26
27
28

                              14

1  plaintiff's § 1985 not frivolous.[8]

2        5. Plaintiff's Due Process Claim For Unpaid Vacation
3        Time

4        Defendants concede that plaintiff's due process claim
5  for the $275 in unpaid vacation time was plausible.  (Defs.' Mot.
6  for Attorneys' Fees at 2).  The court agrees.  Although plaintiff
7  did not follow the procedure outlined in the MOU to recover the
8  money, and although the court held that procedure to adequately
9  protect plaintiff's property interest, (see December 2004 Order
10 at 11-16), this outcome was not so obvious as to render the claim
11 frivolous.

12 C. Claims for Attorneys' Fees Under § 1927 and the Court's
13    Inherent Power

14        Section 1927 of Title 28 provides:

15        Any attorney . . . who so multiplies the proceedings in any
16        case unreasonably and vexatiously may be required by the
          court to satisfy personally the excess costs, expenses, and
17        attorneys' fees reasonably incurred because of such conduct.

18 Section 1927 does not displace the court's inherent power to

19 sanction attorneys.  Chambers v. NASCO, Inc., 501 U.S. 32, 46

20 (1991).  That inherent power includes the power to impose

21 attorneys' fees but is limited to situations where the litigant

22 has acted in bad faith or in willful disobedience of a court's

23 orders.  Id. at 47.  Where an attorney files frivolous pleadings,

24 the inherent power of the court may be used to sanction the

25 attorney.  In re Keegan Mgmt. Co. Sec. Litig., 78 F.3d 431, 435

26
27        [8]   Defendants might also argue that plaintiff does not
   belong to a class protected by § 1985(3).  (See December 2004
28 Order at 21-22).  However, plaintiff could have made a good faith
   argument that the disabled should be protected by § 1985(3).

1   (9th Cir. 1996).

2          In the Ninth Circuit, attorneys' fees may only be
3   awarded to the opposing party under § 1927 when a court finds
4   that an attorney acted in bad faith.  New Alaska Dev. Corp. v.
5   Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).  "Bad faith is
6   present when an attorney knowingly or recklessly raises a
7   frivolous argument or argues a meritorious claim for the purpose
8   of harassing an opponent."  Id.(citation omitted).  For fees to
9   be awarded under § 1927 against an attorney, there must be a
10  causal link between the attorney's multiplication of the action
11  and the fees incurred by the other party.  Kirschner v. Uniden
12  Corp. of Am., 842 F.2d 1074, 1081 (9th Cir. 1988).

13         Section 1927 fees cannot be charged an attorney on the
14  basis of frivolous pleadings.  In re Keegan Mgmt. Co. Sec.
15  Litig., 78 F.3d 431, 435 (9th Cir. 1996)(reasoning that it is the
16  multiplication of proceedings that makes an attorney liable for
17  attorneys' fees under § 1927).  Where an attorney proceeds to
18  litigate a cause of action after being made aware of its
19  frivolity by opposing counsel, a court may find him liable for
20  attorneys' fees under § 1927.  Schutts v. Bently Nevada Corp.,
21  966 F.Supp. 1549, 1559-60 (D. Nev. 1997)(citing Trulis v. Barton,
22  67 F.3d 779, 788 (9th Cir. 1995)).

23         Mr. Angelo alleges numerous instances of bad faith on
24  the part of Mr. Swenson.  (See Angelo Decl. in Supp. of Mot. for
25  Attorneys' Fees).  Angelo alleges that Swenson routinely refused
26  to return his phone calls and faxes, was dilatory in responding
27  to defendants' discovery requests, and refused to extend
28  discovery to allow defendants to take a deposition to preserve

16

1  the testimony of defendant Buck, who had been diagnosed with two
2  forms of cancer.  (See id.).  Angelo effectively argues that
3  Swenson did not extend any professional courtesies to Angelo's
4  firm in the discovery process.  He also effectively argues that
5  Swenson asked some argumentative questions at depositions.
6  However, the court finds that these behaviors alone do not rise
7  to the level of subjective bad faith required to impose § 1927
8  liability upon Swenson.

9         Some of defendants' allegations, however, do raise
10  serious questions about Swenson's conduct during this litigation.
11  First, Swenson signed and filed a complaint alleging that
12  defendant County of Tehama had negligently retained defendant due
13  to his being diagnosed with cancer.  This cause of action made a
14  matter of public record Buck's personal medical information,
15  including his chemotherapy and radiation treatments, and also
16  accused Buck of having "impaired abilities and judgment" due to
17  his cancer.  (See compl. ¶¶ 61-62).  Not only was the county
18  immune from the cause of action, (October 2003 Order at 21-22),
19  but plaintiff had no facts showing that Buck had "impaired
20  abilities and judgment."  (See Pl.'s Opp'n to Defs.' Mot. to
21  Dismiss)(not addressing this cause of action at all).  The court
22  dismissed this claim in its October 2003 order.

23         While attorneys' fees are not available to defendants
24  under § 1927 on the basis of the filing of the negligent
25  retention cause of action, the court may use its inherent power
26  to sanction Swenson.  See In re Keegan, 78 F.3d at 435.  However,
27  the use of the court's inherent power to sanction attorneys is an
28  extraordinary remedy that should only be exercised with extreme

1  caution.  Id.  Although this cause of action seems to have been

2  inserted to harass defendants, the court finds that its inclusion

3  does not warrant the court's use of the extraordinary remedy of

4  ordering Swenson to pay attorneys' fees to defendants.

5          Defendants' next allegation that warrants closer

6  scrutiny is the letter that Swenson authored, signed, and sent to

7  defendants' counsel Angelo on September 14, 2004.  (See Angelo

8  Decl. in Supp. of Defs.' Mot. for Attorneys' Fees Ex. C (Swenson

9  September 2004 letter)).  That letter contains the following

10  passage:

> The defendants and your law firm can also avoid the risks
> attending the actual, existing, material factual conflicts
> your firm has in representing defendants with conflicting
> versions under penalty of perjury regarding material facts:
>
> [In the next paragraph, plaintiff shows that some of
> defendants' witnesses said conflicting things.  The court
> found the allegations of conflict of interest to be without
> merit.  (December 2004 Order at 10 n.5)]
>
> Settlement "hides a lot of sin," and your firm benefits by
> not having to deal with the conflict issues . . .

18  (Id. at 2-3)(emphasis in original).  The language in this letter

19  violates California Rule of Professional Conduct 5-100, which

20  provides that "[a] member shall not threaten to present criminal,

21  administrative, or disciplinary charges to obtain an advantage in

22  a civil dispute."  However, the letter itself does not multiply

23  the proceedings, and defendants' counsel conceded as much at oral

24  argument.  Therefore, awarding attorneys' fees under § 1927 would

25  be contrary to the language of that statute.  The court also

26  declines to exercise its discretion to award attorneys' fees

27  under its inherent power because Swenson's letter is not related

28  to the attorneys' fees that defendants incurred.

18

1    Finally, defendants allege that Mr. Swenson acted in
2 bad faith with regard to his knowledge of the frivolity of the
3 claims.  In a letter dated July 6, 2004, defendants' counsel sent
4 Swenson a letter noting that discovery had closed and outlining
5 the strong case against Swenson's client.  (Angelo Decl. in Supp.
6 of Defs.' Mot. for Attorneys' Fees Ex. A (Smith July 2004
7 letter)).  His continued prosecution of a case he knew to be
8 frivolous left Swenson susceptible to liability for attorneys'
9 fees under § 1927.  Schutts, 966 F.Supp. at 1560.

10    The reality of this unique case, however, leads the
11 court not to award attorneys' fees under § 1927 to defendants on
12 the basis of Swenson's knowledge of the strong case against his
13 client.  Over the course of the last 22 months, the court has had
14 the opportunity to observe plaintiff Allen, his attorney Swenson,
15 and the management of the case.  It has become increasingly clear
16 that Allen, a licensed attorney, was calling the shots during
17 this litigation.  Therefore, if Swenson, after reading Smith's
18 letter, had refused to further prosecute the case, the court is
19 convinced that Allen would have proceeded to litigate the case on
20 his own or found another attorney to do so.  That state of
21 affairs would have led to further delays and would have had no
22 salutary effect on the number of motions and documents filed.
23 Swenson's continued representation of Allen did not, therefore,
24 multiply the proceedings.  The court also does not impose
25 sanctions on Swenson on the basis of its inherent power.
26 D. Calculation of Reasonable Attorneys' Fees

27    Where attorneys' fees are appropriate, the district
28 court is to determine their amount by using the lodestar method –

1  the number of hours reasonably expended on the litigation

2  multiplied by a reasonable hourly rate.  <u>Hensley</u>, 461 U.S. at 433

3  (1983).  There is a strong presumption that the lodestar amount

4  is reasonable.  <u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d 1115, 1119

5  n.4 (9th Cir. 2000).  The court may adjust the lodestar figure if

6  various factors overcome the presumption of reasonableness.[9]

7  <u>Hensley</u>, 461 U.S. at 433-34.

8      Where a prevailing defendant is awarded attorneys' fees

9  in a civil rights action, the financial resources of the

10  plaintiff should be considered.  <u>Patton v. County of Kings</u>, 857

11  F.2d 1379, 1382 (9th Cir. 1988).  The award should not subject

12  the plaintiff to financial ruin.  <u>Id.</u>

13      The court computes the attorneys' fees due defendants

14  for the effort they expended in defending against the frivolous

15  claim.  <u>See</u> <u>Hensley</u>, 461 U.S. 424, 435 (1983)("unrelated claims

16

17      [9]  The court may adjust the lodestar figure on the basis
    of the <u>Kerr</u> factors:

18          (1) the time and labor required, (2) the novelty and
19          difficulty of the questions involved, (3) the skill
            requisite to perform the legal service properly, (4)
20          the preclusion of other employment by the attorney due
            to acceptance of the case, (5) the customary fee, (6)
21          whether the fee is fixed or contingent, (7)
            time limitations imposed by the client or the
22          circumstances, (8) the amount involved and the results
            obtained, (9) the experience, reputation, and ability
23          of the attorneys, (10) the "undesirability" of the
            case, (11) the nature and length of the professional
24          relationship with the client, and (12) awards in
            similar cases.

25  <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir.
    1975).  Many of the <u>Kerr</u> factors have been subsumed in the
26  lodestar approach.  <u>Cunningham v. County of Los Angeles</u>, 879 F.2d
    481, 487 (9th Cir. 1988).  Moreover, the court should consider
27  the factors established by <u>Kerr</u>, but need not discuss each
    factor.  <u>Sapper v. Lenco Blade, Inc.</u>, 704 F.2d 1069, 1073 (9th
28  Cir. 1983).

1   [must] be treated as if they had been raised in separate

2   lawsuits"). The court adopts the method used in Schneider v.

3   Elko County Sheriff's Department. See 17 F.Supp. 2d 1162, 1166

4   (D. Nev. 1998). Schneider found the most natural way to

5   calculate attorneys' fees in a situation with separable frivolous

6   and non-frivolous claims is to "compar[e] the amount of the

7   motion for partial summary judgment devoted solely to the

8   [frivolous claims] to the amount devoted to legal argument on all

9   other claims." Id. Schneider went on to divide the number of

10  lines in the motion devoted to the frivolous claims by the total

11  number of lines in the motion, and then multiplied that

12  percentage by the lodestar amount. Id.

13          Defendants have presented the court an itemized list,

14  from July 8, 2003 to the present, of the fees charged their

15  clients. (Smith Decl. in Supp. of Defs.' Mot. for Attorneys'

16  Fees Ex. A (fee invoices)). Partners at the law firm of Angelo,

17  Kilday and Kilduff charged $150 per hour, associates charged $130

18  per hour, and paralegals charged $75 per hour. The total billed

19  on this matter is $206,956.25. Id. ¶ 2. Defendants would offset

20  this amount by the $600 already recovered in sanctions against

21  plaintiff's counsel, so they seek $206,356.

22          Plaintiff does not object to the rates charged by

23  defendants' counsel. (Pl.'s Opp'n to Defs.' Mot. for Attorneys'

24  Fees at 27-28). Indeed, the court finds those rates to be

25  extremely reasonable under the circumstances. Plaintiff does not

26  point to any specific charge he considers excessive, but he makes

27  the argument that defendants' fees must be inflated because

28  $206,325 is too much to pay to defend against frivolous and

21

groundless claims.   First, the court notes that plaintiff's open-ended discovery requests tended to produce these kinds of fees.[10] Second, plaintiff's counsel's tendency to not return phone calls or faxes and to fight every step of the way on minor discovery matters also tended to make defendants' fees balloon.   (See Angelo Decl. in Supp. of Mot. for Attorneys' Fees ¶¶ 3-89).

Plaintiff might also argue that the fees defendants incurred after December 28, 2005 should not be recoverable. However, the fees incurred by defendants in preparing a motion for attorneys' fees are recoverable against the plaintiff where the plaintiff has pursued a frivolous civil rights claim. Schutts, 966 F.Supp. at 1565.   The court finds the entire $206,325 to have been reasonably expended.[11]   Neither plaintiff

---

[10]   On May 1, 2004, Plaintiff served nine sets of discovery on Defendants, including requests for production of documents, special interrogatories and requests for admissions.   It was the first discovery initiated by Plaintiff during the entire litigation.   Responses to all sets of discovery were due June 3, 2004.   The special interrogatories consisted of 155 interrogatories when subparts were counted under Fed. R. Civ. Proc. 33(a).   The requests for production demanded 74 categories of documents, very few of which required singular responses such as particular books or letters.   The requests for admissions requested the admission of 122 alleged facts.   Although many of the requests were similar or the same between defendants, many were not.   A full response required production of a large number of documents and a review of almost all of the litigation correspondence in matters handled by James Allen as a Tehama Deputy County Counsel. (Angelo Decl. in Supp. of Mot. for Attorneys' Fees ¶ 47).

[11]   There was a safeguard in place to prevent defendants' fees from being inflated.   Tehama County has kept current in their payments to Angelo, Kilday, & Kilduff, and so has had an interest in keeping taxpayer expenditures on this matter to a minimum.   (See Smith Decl. in Supp. of Defs.' Mot. for Attorneys' Fees Ex. A (fee invoices))

nor defendants argue that the court should adjust this lodestar
figure based on the <u>Kerr</u> factors.  The court has considered the
<u>Kerr</u> factors and holds that they do not provide grounds for
adjusting the lodestar amount.

The court proceeds to compute the fees plaintiff must
pay defendants for filing and pursuing a frivolous claim under
<u>Schneider</u>.  <u>See</u> 17 F.Supp. 2d at 1166 (D. Nev. 1998).  The only
frivolous claim on which defendants may recover their fees was
dismissed on October 8, 2003.  (<u>See</u> October 2003 Order at
24)(dismissing plaintiff's § 1983 claims based on the First,
Fourth, and Fifth Amendments).

Not counting the preliminary exposition of facts,
defendants' motion to dismiss contains 84 lines dedicated to the
frivolous § 1983 claim out of a total of 625 lines dedicated to
argument, for an approximate percentage of 13.4%.[12]  The total
billed from the inception of the suit to October 7, 2003 was
$35,517.  (Smith Decl. in Supp. of Defs.' Mot. for Attorneys'
Fees Ex. A (fee invoices)).  Therefore, defendants are entitled
to $4,759 for this period.

Because there were no other frivolous claims,
defendants are due $4,759 for the period between this case's
inception and Decmeber 27, 2004, the date defendants were granted
summary judgment on the remaining causes of action.  This amount
is 2.8% of the $172,545 in total fees incurred by defendants for

---

[12]    The court rounds this and following numbers to reflect
the necessarily inexact nature of the court's determination of
the amount of time spent on frivolous and nonfrivolous claims.
The number of lines spent on a given argument is not always
determinative, but is a good indicator in this case.

1  that time period.  Applying that 2.8% figure to the remaining

2  $34,411.25 incurred from December 28, 2004 to January 26, 2005,

3  the date of this motion's submission to the court, plaintiff owes

4  additional attorneys' fees of $964 for this period.

5          Therefore, the court computes that plaintiff owes

6  defendants attorneys' fees in the amount of $4,759 + $964 =

7  $5,723.

8          The next question is how much, if at all, the court

9  should discount these awards for plaintiff's income.  Plaintiff

10  has filed a supplemental declaration in which he states his net

11  worth and his annual salary.  In 2004 plaintiff had an adjusted

12  gross income of $101,162.  His annual salary is $110,000.  His

13  wife, whom he supports, does not work.  He does not own a home,

14  and his other assets, including his retirement account, do not

15  exceed $75,000.  His annual medical expenses exceed $15,000.

16          This is not the financial picture of a man who is

17  extremely wealthy, nor is it one of a man living in poverty.  The

18  court finds that a sanction of $5,723 against Allen would not

19  subject him to undue financial hardship.  Compare Schutts, 966

20  F.Supp. at 1553, 1565(finding that plaintiff convicted felon, who

21  did not have independent means, could afford attorneys' fees

22  award of $6,281).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1      IT IS THEREFORE ORDERED that defendants' motion for

2  attorney's fees and costs be, and the same hereby is, GRANTED in

3  the amount of $5,723 against plaintiff James Allen.

4  DATED: April 15, 2005

5

6

7                    WILLIAM B. SHUBB
                     UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              25